**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DELIJAH KELLEY,<br><br>      Plaintiff,<br><br>v.<br><br>LT. HENZMANN, CORRECTIONAL OFFICER JOHN DOE #1, CORRECTIONAL OFFICER SIEFFERT, and MAJOR JOHN DOE #2,<br><br>      Defendants. | Case No. 25-cv-1486-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Delijah Kelley, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of her constitutional rights while at Centralia Correctional Center.[1] In the Complaint, Kelley alleges that Defendants used excessive force, denied her due process, and were deliberately indifferent to her conditions of confinement and medical needs.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

---

[1] Kelley has identified herself in the Complaint as a transgender individual who uses she/her pronouns.

1

granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On January 4, 2025, Kelley was forced onto crisis watch despite not claiming to be suicidal or homicidal (Doc. 1-1, p. 3). She asked to speak to Lieutenant Henzmann for an explanation of her placement. Henzmann and Correctional Officer John Doe #1 approached Kelley's cell and told her to calm down (*Id.*). She relaxed, and Henzmann ordered her to place her hands through the chuckhole (*Id.*). Henzmann threatened to pepper spray Kelley if she did not comply (*Id.*). Upon placing her wrists in the chuckhole, Henzmann and John Doe #1 grabbed them and twisted her wrists, slamming her arms against the sides (*Id.*). Henzmann shouted that this is "what we do to fags like you here!" (*Id.*).

Henzmann and John Doe #1 then directed Kelley to lie on the floor of her cell (Doc. 1-1, p. 4). Major John Doe #2 entered the cell and stood on Kelley's back for over two minutes despite Kelley begging him to stop (*Id.*). John Doe #2 reiterated that this was how they treated inmates like Kelley. Kelley responded that she was a transwoman. In response, John Doe #2 kicked her in the head and placed his boot on her neck (*Id.*). John Doe #2 directed Kelley to admit that she was a man and not a woman (*Id.*). He then told Kelley that he was writing her up for a staff assault, stating that she spit on one of the officers (*Id.*). Kelley denied the accusation, but John Doe #2 noted that officials would believe whatever he wrote down (*Id.*).

John Doe #2 ordered John Doe #1, Henzmann, and Sieffert to remove the crisis watch blanket and mattress from Kelley's cell (Doc. 1-1, p. 4). Mental health staff previously approved the items for Kelley, and she maintains that only mental health staff can change the authorization (*Id.* at p. 5). According to Kelley, John Doe #2 had no authority to order the

removal of the items. Kelley was left naked in the cell (*Id.*). She called to Sieffert and complained of pain from the earlier attack. She showed Sieffert the bruises and swelling and requested medical care. Sieffert refused Kelley's request for medical attention despite the crisis watch cells being located in the healthcare unit and close to medical staff (*Id.*). Kelley also asked Sieffert for her crisis watch blanket due to the freezing temperatures in the cell, but Sieffert refused her request (*Id.*). Kelley alleges that the air conditioning was on high, causing Kelley to freeze without clothes or access to a blanket (*Id.*).

## **Preliminary Dismissals**

To the extent Kelley alleges that John Doe #2 violated her due process rights by issuing a false disciplinary ticket, she fails to state a claim. The receipt of a false disciplinary ticket does not, on its own, amount to a due process violation. *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted); *see also Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). Further, Kelley fails to allege any specifics about the disciplinary process, including whether she actually received a disciplinary ticket, the results of that ticket, or what, if any, discipline she received. There are simply no allegations suggesting that Kelley was deprived of a protected liberty interest or that she was deprived of any due process safeguards during the disciplinary proceedings. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017); *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024).

Kelley also alleges that her equal protection rights were violated by the statements Henzmann and John Doe #2 made regarding her gender identity. But "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). And Kelley fails to allege how Defendants'

statements constituted an equal protection violation, other than to state in conclusory fashion that their statements were a violation. Thus, Kelley fails to state an equal protection claim.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment excessive force claim against Henzmann, Sieffert, John Doe #1, and John Doe #2 for the use of physical force against Kelley on January 4, 2025.**

**Count 2:** **Eighth Amendment cruel and unusual punishment claim against John Doe #2 and Henzmann for their use of verbal harassment against Kelley on January 4, 2025.**

**Count 3:** **Illinois state law claim of assault and battery against Henzmann, John Doe #1, and John Doe #2 for the use of physical force against Kelley on January 4, 2025.**

**Count 4:** **Illinois state law claim for intentional infliction of emotional distress against John Doe #2 and Henzmann for their verbal harassment of Kelley on January 4, 2025.**

**Count 5:** **Eighth Amendment deliberate indifference to medical needs claim against Sieffert for failing to provide Kelley with medical care after the use of force by the officers.**

**Count 6:** **Eighth Amendment deliberate indifference claim against Henzmann, John Doe #1, John Doe #2, and Sieffert for taking away Kelley's approved crisis watch blanket and mattress and subjecting her to the extreme cold in the crisis watch cell.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 1**

At this stage, Kelley states a viable excessive force claim in Count 1 against John Doe #1, John Doe #2, and Henzmann. Kelley alleges that John Doe #1 and Henzmann slammed her wrists against the chuckhole and then were present with John Doe #2 when he stood on her back and neck and kicked her (Doc. 1-1, pp. 3-4). Kelley fails, however, to state a claim against Sieffert in Count 1. Although Kelley alleges that Sieffert is liable for excessive force (Doc. 1-1, p. 6), the statement of claim fails to include any allegations to suggest that Sieffert used force against Kelley. She fails to allege that Sieffert was present while the other officers hit her hands against the chuckhole or stood on her back and neck (*Id*. at pp. 4-5). Kelley only alleges that Sieffert was present when John Doe #2 ordered the officers to remove the crisis watch blanket and mattress from Kelley's cell. Because there are no allegations to suggest that Sieffert engaged in excessive force, the claim against Sieffert is Count 1 is **DISMISSED without prejudice**.

**Count 2**

Kelley also alleges that Henzmann and John Doe #2 called her names and attacked the fact that she is a transwoman. Although simple, verbal harassment does not usually state a claim, derogatory harassment causing severe psychological harm may state a claim. *See Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015). Kelley's allegations rise to the level of actionable harassment. She alleges that Henzmann used physical force and yelled that his actions were how guards treated people like Kelley, referring to her gender and sexual preferences. John Doe #2 also challenged Kelley to identify herself as a man while he stood on her back and then kicked her. Such conduct goes beyond simple, verbal harassment. Thus, Kelley states a claim under the Eighth Amendment.

**Counts 3 and 4**

Kelley also adequately alleges an assault and battery claim in Count 3 against Henzmann, John Doe #1, and John Doe #2 for the same conduct alleged in Count 1. *See Shea v. Winnebago County Sheriff's Dep't*, 746 F. App'x 541, 548 (7th Cir. Aug. 16, 2018) (discussing assault and battery under Illinois law). She also adequately states a claim in Count 4 for intentional infliction of emotional distress for the same conduct in Count 2. Thus, Count 4 shall proceed against Henzmann and John Doe #2.

Because Counts 3 and 4 derive from the same facts as Kelley's federal claims, the state law claims will also proceed in this case. *See* 28 U.S.C. § 1367(a); *see also Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

**Count 5**

Kelley also states a viable claim in Count 5 against Sieffert. She alleges that she asked for medical care for her injuries, but Sieffert refused to obtain medical care or contact the nurses for Kelley's injuries. Thus, Count 5 shall proceed against Sieffert.

**Count 6**

Finally, Kelley states a claim against all four defendants for taking away her crisis blanket and subjecting her to cold temperatures in the crisis watch cell. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). Thus, Count 6 shall proceed against Henzmann, John Doe #1, John Doe #2, and Sieffert. To help identify the John Doe defendants, the Court **ADDS** the current warden of Centralia Correctional Center, Jeffrey Wehking, in his official capacity only, to respond to discovery aimed at identifying the unknown defendants.

## Motion for Counsel

In addition to her Complaint, Kelley filed a motion for recruitment of counsel (Doc. 3). Kelley notes that she has a sixth-grade education, suffers from schizophrenia, and is unable to read or write (Doc. 3, p. 1). Attached to her Complaint, Kelley included an affidavit from another inmate who helped her draft her complaint due to her inability to read or write (Doc. 1, p. 8). But given the early stages of the litigation process, the Court finds that counsel is not necessary at this time. Defendants have yet been served nor have they filed Answers. Once all defendants have been served and filed Answers, the Court will enter a scheduling order with next steps in the litigation process. Should Kelley experience difficulties in proceeding with the case at that time, she may renew her request for counsel. At this time, her motion for counsel (Doc. 3) is **DENIED**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Henzmann, John Doe #1, and John Doe #2. Count 2 shall proceed against Henzmann and John Doe #2. Count 3 shall proceed against Henzmann, John Doe #1, and John Doe #2. Count 4 shall proceed against Henzmann and John Doe #2. Count 5 shall proceed against Sieffert and Count 6 shall proceed against Henzmann, John Doe #1, John Doe #2, and Sieffert. Jeffrey Wehking is **ADDED** to the case to identify the John Does.

The Clerk of Court shall prepare for Lieutenant Henzmann, C/O Sieffert, and Jeffrey Wehking (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Kelley. If a defendant fails to sign

and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Kelley, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Kelley's claims involve her medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Kelley, and the judgment includes the payment of costs under Section 1915, she will be required to pay the full amount of the costs, regardless of whether her application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Kelley is **ADVISED** that she is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in her address; the Court will not independently investigate her whereabouts. This shall be done in writing and not later than

**14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    DATED:  September 29, 2025

                                                _____
                                                **NANCY J. ROSENSTENGEL**
                                                **Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**